PLANTERS BANK & TRUST COMPANY, a Banking Corporation, as Trustee for the Benefit of James David Hite *et al.*, Plaintiffs-Appellees, *v.* WILLIAM K. HITE, Defendant-Appellant.

(No. 11240; ▮▮▮▮▮▮)

Fourth District—October 26, 1970.

Ralph D. Glenn of Glenn & Logue, of Mattoon, for appellant.

Jack H. Anderson, of Charleston, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

The parties, husband and wife at the time, entered into a contract for settlement of property rights which later on was incorporated into a decree divorcing them. The wife has died and her executor and former husband disagree as to the construction to be placed on a paragraph of such contract. The husband says that the paragraph provides for alimony which would terminate on her death while the executor thinks just the opposite. The trial court's able memorandum supports the executor. Other parts of the contract and decree have some bearing on construction and we will allude to them as we go along, but to avoid possible future confusion as to the purport of our affirmance, we deem it in order to set forth the questioned paragraph in toto though its length leaves something to be desired:

"5. First Party [husband] agrees to pay Second Party the additional sum of Forty-five Thousand Dollars ($45,000.00), payable in regular monthly installments of $200.00 per month, said installments being payable on or before the 15th day of each calendar month commencing May 1, 1961, and continuing until said sum has been fully paid.

As security for the payment of the said $45,000.00 First Party agrees that he will maintain and keep in full force and effect Massachusetts Mutual Life Insurance Policies, Nos. 3158645 and 3158644, each in the amount of $25,000.00, and that concurrently with the execution of this agreement he will execute an assignment of life insurance policies as collateral in the form of a copy being attached hereto and made a part hereof by reference and designated as 'Exhibit A'.

These policies shall be kept in full force and effect until the $45,000.00, hereinabove referred to, shall be paid in full at which time said assignment, hereinabove referred to, shall terminate. It is further stipulated and agreed that Second Party shall receive notice of premiums due to all of said policies and shall be advised of payment of such

premiums by First Party. It is understood and agreed by the parties hereto that the Two Hundred Dollars ($200.00) monthly payments, herein provided, are subject to Federal Income Tax to be paid by Second Party pursuant to income tax regulations. It is expressly understood and agreed by the parties hereto that in the event of the partial or total disablement of First Party, he shall have the right and privilege to apply to the Court for modification of the amount and manner of payment of said $45,000.00 sum."

The use of the adjective "additional" to modify "sum of $45,000.00" is is obvious reference to preceding Paragraph 4 in which the husband agreed to pay the wife the sum of $20,000.00 over a period of three months immediately following the divorce in May, 1961. This amount has been paid and the payments called for in the quoted paragraph have also been paid, but ceased, as we have noted, upon the death of the wife in April, 1964.

The decree recites the entering of the contract, "settling and determining their property rights   *   *   *, and including a division of the property, alimony, support and maintenance of the children of the marriage, and all other matters", and then such contract is set forth verbatim. The contract, in like vein, recites the desire "to make a complete settlement, now and forever of their respective proprty rights", that "except as otherwise provided herein, each of the parties expressly release, *   *   *   including claims for alimony, which either party may have against the other." Decretal provisions pick up again, and the contract of settlement is confirmed and made a part of the decree and "shall also be held to be a complete bar to any other rights by way of alimony or inheritance or otherwise".

■■   Were it not for the fact that the questioned paragraph had its very being in a divorce context, there could hardly be any question of the vested nature of the payments and the executor's right to their continuation, barring the contingency of partial or total disablement. In any other context—say a contract between A and B for the payment of $45,000.00 in installments—the concept of alimony would be distinctly out of place. But the concept can obtrude here because a marriage has been severed and we can surmise that it was a topic of the most vital interest to all concerned. As we know, it can be both had or waived by agreement, and in Illinois, unlike some states, both man and wife are eligible—which, if you think about it, puts our state on a very modern footing indeed.

■■   But regardless of the context it seems to us that we would be warping meaning if we were to call these payments alimony. Rather, as we see it, this provision is part of the *quid pro quo* of settlement. (*Walters v.*

*Walters,* 409 Ill. 298, 99 N.E.2d 342.) For us to say that these payments should cease upon her death would be to alter that *quid pro quo.* This we cannot do. People make agreements, not courts. Courts come in, as here, when agreement turns to disagreement but only to resolve the latter, not to remake the former.

■■■ But it is argued that all the earmarks of alimony are present if we would only look past form to substance. But the substance, as we see it, is not alimony, but rather an agreement to do something that must be done and continue to be done until a total agreed amount has been paid, barring one contingency. Simple because payments are in installments doesn't make such alimony. Such amount further, we note, was secured by life insurance if the husband should die prior to full payment, certainly a clue to nondefeasibility. Yet, it is argued, the fact that such payments could be modified upon a showing of partial or total disability, demonstrates an intent that the payments were alimony and not something vested and inheritable. Most assuredly, an earmark of alimony is its modifiable nature upon a change in conditions of either party. But the parties can and did agree to this contingency, and this they can do without altering the vested nature of the payments. This provision permitting modification upon disablement does not, in our opinion, transmute these payments into alimony though they became part of a decree of divorce. *Roberts v. Roberts,* 90 Ill.App.2d 184, 234, N.E.2d 372.

It is also urged that if not alimony, why use a different paragraph and not incorporate it in the preceding "lump sum" paragraph. As we have pointed out, however, the use of the word "additional" destroys any inference, remote as it is, that such was the thinking of the parties. Numbering of paragraphs finds efficacy, to be sure, in separating for clarity various aspects of an agreement, but its presence or absence, at least here, really means very little. We are told, too, that if this was a property settlement or even a settlement in lieu of alimony, the parties would have used language to that effect, but the same argument has its other side and cuts just as deep. The payments are, as we have said, part of the consideration of a property settlement, and being such, passed on the former wife's death to her executor. Divorce or death may part a marriage, but not always its consequences. The order appealed from is affirmed.

Judgment affirmed.

CRAVEN, P. J. and TRAPP, J., concur.