Florence Howison, Plaintiff-Appellee, v. Robert W. Howison, Defendant-Appellant.

Gen. No. 69–203.

Second District.

September 1, 1970.

Neuendorf and Nickels, of Sandwich, for appellant.

Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

JUSTICE THOMAS J. MORAN delivered the opinion of the court.

This appeal is from an order denying the defendant's counterclaim for divorce founded upon desertion and extreme and repeated mental cruelty.

The plaintiff and defendant were married in 1942. On September 28, 1967, the plaintiff left the marital home and the following day filed a complaint for separate maintenance. The complaint claimed that the defendant, without provocation, was guilty of physical cruelty and that it became necessary for her to live separate and apart, all without her fault. The defendant denied, by answer, certain of the allegations contained in the complaint and counterclaimed for divorce. The counterclaim was founded upon extreme and repeated mental cruelty. Thereafter, on August 20, 1968, by stipulation of the parties, the proceedings were suspended and an order of reconciliation was entered. The parties then resumed living together.

Several continuances were granted upon motion of both parties and, on April 7, 1969, the plaintiff was allowed to

withdraw her complaint for separate maintenance. On the same day, the defendant was allowed to amend his counterclaim by adding a second count for divorce based upon desertion. This was filed on April 10, 1969. No order revoking the order of reconciliation is found in the record; nevertheless, the amended counterclaim came on for hearing before the court on April 28, 1969. At the time of the hearing the plaintiff and defendant were both residing in the marital home.

At the close of the evidence the trial court found that the defendant (counterplaintiff) had not met the burden of proof necessary to sustain his case and denied the counterclaim.

On appeal, the defendant has raised various issues, many of which are collateral and, we believe, answerable under a singular question: Was the trial court's finding against the manifest weight of the evidence as to each of the alleged grounds claimed for divorce?

The fact is undisputed that on April 10, 1969, the date the defendant filed his amended counterclaim for divorce charging the plaintiff with desertion, the parties were both residing in the marital home. It is defendant's position that, regardless of this fact, he may maintain an action on desertion and, as authority, quotes from our decision in Roback v. Roback, 59 Ill App2d 222, 226, 207 NE2d 130 (1965):

> "In the case at bar, the fact that the parties were living under one roof did not indicate that the complaint was filed in bad faith. However, in actions for separate maintenance and in actions for divorce based upon desertion, where the element of living apart is essential to establish probable cause or grounds on which to base the action, the fact that the parties live together under one roof may, under certain circumstances, indicate an absence of good faith

in the filing of such action. Here, the plaintiff filed complaint in the alternative, for separate maintenance or divorce, and upon the filing of a motion to dismiss, voluntarily dismissed the separate maintenance action. . . ."

The defendant has, however, inadvertently overlooked the sentence which follows the above quote:

". . . Had separate maintenance been the sole relief sought, defendant's argument might have merit, but it is no answer to the complaint for divorce based upon cruelty. . . ."

■■ The nature of a complaint for divorce based upon desertion requires that the parties be living separate and apart. In Lindeman v. Lindeman, 337 Ill App 261, 85 NE2d 847 the Court stated:

"We are confronted with the question whether the statutory period of divorce can begin to run while the husband and wife are living in the same home. The answer is no."

This same proposition applies to a complaint for separate maintenance. Baumgartner v. Baumgartner, 16 Ill App2d 286, 293, 148 NE2d 327 (1958).

The evidence is uncontradicted that during the last 15 years of their marriage, the plaintiff and defendant were not conjubilant. Though they were together under one roof, they slept in separate rooms. The defendant, a farmer, tended to his farming while the plaintiff, a registered nurse, engaged in her profession. The record discloses that the plaintiff worked nights, at times employed in two different positions, but that she performed all of her normal household duties and, according to the defendant, "She kept a wonderful house"; however, she displayed no physical affection toward the defendant. When

queried as to whether he ever attempted to display any affection toward his wife since 1959, he responded that he had once while she was at the sink but she told him to "get away, I haven't got time."

There seemed to be an attitude on the part of the plaintiff, according to the defendant, that he was to run the farm and she would run the house. The testimony of the defendant disclosed that while working on the farm or with the cattle he was content; however, eight out of ten times when he would start to enter the house, he wondered if he was going to "get heck" from the plaintiff. He "supposed" that if he did not work hard during the day, her course of conduct would have affected his sleep at night but he never complained of any lost sleep. When asked if her conduct rendered his life unendurable, he responded, "It seemed that way to me. I could live on that way, yes, but she told me she wasn't happy . . . (U)nder present circumstances it is. But, as I say, you can't explain it here in words." The plaintiff and defendant were the only witnesses to testify.

In 1967 the Illinois Legislature adopted mental cruelty as a grounds for divorce in Illinois. Our research discloses that, to date, there have been two decisions rendered by our reviewing courts which disclose the type of proof necessary to establish such grounds. Stanard v. Stanard, 108 Ill App2d 240, 247 NE2d 438 (1969) ; Hayes v. Hayes, 117 Ill App2d 211, 254 NE2d 288 (1969).

██ What constitutes mental cruelty depends upon the total circumstances set forth in a given case. The conduct of a defendant may vary from case to case but the ultimate test is the effect such conduct has upon the plaintiff and the marriage. Nelson on Divorce, [1] in commenting upon the subject, has stated that decisions, in

---

[1] Footnote: Nelson on Divorce, Callaghan Co., Chicago, § 6.06 (1966).

various jurisdictions, defining mental cruelty have employed a variety of phraseology making it impossible to set forth all such conditions in an acceptable form. However, it is generally recognized that the elements consist of a course of abusive and humiliating treatment, calculated or obviously of a nature to torture, discommode, or render miserable the life of the opposite spouse; and which actually affects the physical or mental health of such spouse.

As stated in Stanard (supra, page 249), the conduct of the defendant must be such as to cause embarrassment, humiliation and anguish so as to render life miserable and unendurable or to cause the plaintiff's life, person or health to be endangered.

The defendant herein has failed to present sufficient evidence to warrant the trial court to grant him a divorce based upon extreme and repeated mental cruelty or desertion and, therefore, we are of the opinion that the trial court's findings were not against the manifest weight of the evidence and its judgment shall be affirmed.

Judgment affirmed.

DAVIS, P. J. and SEIDENFELD, J., concur.